UNITED STATES of America,
Appellant,

v.

STUTSMAN COUNTY IMPLEMENT COMPANY, Inc., Appellee.

UNITED STATES of America,
Appellant,

v.

MIDWEST MOTORS, Appellee.
Nos. 16166, 16167.

United States Court of Appeals
Eighth Circuit.
Jan. 21, 1960.

John J. Pajak, Atty., Tax Division Dept. of Justice, Washington, D. C., for appellant.

Philip B. Vogel, Fargo, N. D., for appellees.

Before GARDNER, WOODROUGH and BLACKMUN, Circuit Judges.

WOODROUGH, Circuit Judge.

On May 22, 1958, the United States brought an action in the District Court of North Dakota under section 7403 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 7403, to foreclose tax liens and for the appointment of a receiver of all the properties of the taxpayer, Fay Heasley, that were subject to the tax liens. Assessments for income taxes, fraud penalties and interest against the taxpayer were made by the Commissioner of Internal Revenue on February 18, 1954, and on February 24, 1954, after demand was made upon him for the payment of the taxes and payment was refused, notice of tax liens was duly filed in accordance with section 6323 of the 1954 Code. By the terms of section 6321 the amounts of the unpaid taxes constituted liens upon all properties and rights to property belonging to the taxpayer and section 6322 fixed the time of origin and duration of the liens. Relevant parts of the four sections are as follows:

"§ 6321. Lien for taxes. If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C.A. § 6321.

"§ 6322. Period of lien. Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed is satisfied or becomes unenforceable by reason of lapse of time." 26 U.S.C.A. § 6322.

"§ 6323. Validity against mortgagees, pledgees, purchasers, and judgment creditors. (a) Invalidity of lien without notice.—Except as otherwise provided in subsection (c), the lien imposed by section 6321 shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the Secretary or his delegate * * *" 26 U.S. C.A. § 6323.

"§ 7403. Action to enforce lien or to subject property to payment of tax. (a) Filing.—In any case where there has been a refusal or neglect to pay any tax, or to discharge any liability in respect thereof, whether or not levy has been made, the Attor-

ney General or his delegate, at the request of the Secretary or his delegate, may direct a civil action to be filed in a district court of the United States * * * under this title with respect to such tax or liability or to subject any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax or liability."

Among the defendants named in the government's complaint were two corporations, the Stutsman County Implement Company and Midwest Motors, appellees herein, as to which it appears that after the notice of the tax lien was filed the taxpayer transferred to the Stutsman company certain items of his farm machinery and to the Midwest company his used automobile. The complaint prayed among other things for foreclosure of the tax liens upon all these items of property so transferred by the taxpayer. Both of the defendant companies filed petitions in the case presenting the facts that each of the transfers of property of the taxpayer to the companies on which foreclosure of lien was prayed was part of a transaction in which the taxpayer traded used property and cash for new property. In the case of the Motor company it was an old automobile for a new one and with the Implement company the trade was old farm machinery for new. The aggregate of cash given by the taxpayer in addition was $16,633.65. Neither company denied the validity of the government's tax lien upon the property transferred to them by the taxpayer but both companies prayed that the federal tax liens upon said property be discharged upon equitable considerations.

After a hearing upon the petitions and objections made to them by the government, the court entered orders that "the lien of plaintiff be and the same is hereby discharged from One 1953 Model Dodge Two-Door Sierra Station Wagon, * * * [being the automobile transferred to Midwest Motors] in the possession of the Defendant Midwest Motors and that "the lien of the United States of America on the following described property [describing old machinery consisting of four diesel tractors, three plows, two disk tillers and one press drill, being the machinery transferred by the taxpayer to Stutsman County Implement Company] be in all things discharged and terminated * * * ."

The government appeals from the orders contending that the court erred in discharging the federal tax liens from the property transferred by the taxpayer to the appellees after notice of such liens had been duly filed.

The parties agree that the facts are simple and uncontroverted and that United States duly assessed the taxes and gave due notice of the tax lien and that thereafter while the lien remained unsatisfied the taxpayer traded and transferred to the appellees his old automobile and his old farm machinery together with $16,633.65 in cash for a new automobile and new farm machinery of exactly the, same kind. They agree that "the tax lien immediately attached to the new property" acquired by the taxpayer but appellees contend that "to allow the tax lien to be a charge on both the old and the new property would be to unjustly enrich the government".

They argue that it would be "inequitable", "unjust", and "unconscionable" that the government should have a lien on the used property traded to them and also a lien on the property sold to and received by the taxpayer from them. Furthermore that the position of the government was so greatly bettered when the valuable new property acquired by the taxpayer became subject to the tax lien that it would be inequitable for the government to also retain the lien it had on the traded property. There is no contention by appellees that the lien attached to the old automobile and farm machinery transferred to them were invalid. The lien admittedly was created and became effective pursuant to the provisions of the internal revenue statutes. The reliance of appellees is entirely upon so-called equitable considerations which they claim justify the discharge of the

liens by the court. The point relied on is stated: "Equitable principles are applicable to tax assessments and collections." It is apparently in accord with this view that the court held that the liens were valid but that they should notwithstanding be and they were ordered discharged. No opinion was filed.

It is contended for the government that there was no statutory authority for such discharge of tax liens upon alleged equitable considerations; that in the absence of such authority the court should not have discharged the tax liens and that the fact that tax liens also attached to property which appellees sold to the taxpayer and for which the encumbered items were part payment, is no reason for the discharge of such liens.

Among the decisions cited by appellees to support the orders is United States v. Detroit Timber & Lumber Company, 1906, 200 U.S. 321, 26 S.Ct. 282, 288, 50 L.Ed. 499. It was not a tax case but was one in which the Court made application of general principles of equity in a suit for the recovery of money brought by the United States. But the Court also declared the limitation on its application of those principles as follows:

"In passing upon transactions between the government and its vendees we must bear in mind the general principles of equity, and determine rights upon those principles, except as they are limited by special statutory provisions."

In this case it is the statute that creates the tax lien and prescribes its duration and after the notice has been duly given the power of the court to determine the rights of the parties in respect to the lien is limited by the statute. There was no statutory authority conferred on the court to discharge or terminate the lien without satisfaction of the tax or exhaustion of the property and its equity power was "limited by special statutory provisions".

We do not find in any of the cases cited for appellees a holding that the court may discharge a valid tax lien imposed by the statute merely because it appears to the court that the existence of the lien bears harshly on those who have dealt with the taxpayer in disregard of the lien. Nor has it been decided that valid tax liens may be removed simply because the encumbered property has been traded for more valuable property.

Appellees cite Bull v. United States, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421, which was analyzed and discussed for this Court in Crossett Lumber Company v. United States, 8 Cir., 87 F.2d 930, 109 A.L.R. 1348. In both cases it was recognized that equitable principles should be applied in actions to recover taxes, but neither decision affords any support to the contention that the court may contravene the statute and gratuitously expunge a tax lien which the statute provides shall continue. In both cases there was consideration of and application of the equitable doctrine of recoupment, resulting favorably to the taxpayer in Bull and unfavorably to it in Crossett, but in both cases applicable statutes were complied with. The appellees also cite Comar Oil Company v. Helvering, 8 Cir., 107 F. 2d 709; Wheelock v. Commissioner, 5 Cir., 77 F.2d 474; and United States v. Kensington, 3 Cir., 169 F.2d 9. But we do not find that they tend to support the orders appealed from.

The government's contention that after notice of the tax lien had been duly filed the tax lien became and remained enforceable against the subsequent purchasers is so clearly supported by the statutory provisions that it appears to have been seldom disputed in court. In Burton v. Smith, 1839, 13 Pet. 464, 483, 10 L.Ed. 248, the Supreme Court observed that "it is of the very nature and essence of a lien, that no matter into whose hands the property goes, it passes cum onere" and that declaration is as applicable to the transfer of the encumbered property to the appellees in 1957 as when it was made in 1839. The Supreme Court repeated the declaration something over a year ago in United States v. Bess, 357 U.S. 51, 57, 78 S.Ct. 1054, 1058, 2 L. Ed.2d 1135, after stating that "The

transfer of property subsequent to the attachment of the lien does not affect the lien, * * * ".

We find no case passing directly on defendants' contention that the court may avoid a valid tax lien contrary to the statute as here attempted but applicable principles are declared in Metropolitan Life Insurance Company v. United States, 6 Cir., 107 F.2d 311, 313, certiorari denied 310 U.S. 630, 60 S.Ct. 978, 84 L.Ed. 1400. The Court said:

> "The statute imposing a lien for federal taxes is derived from the Act of July 13, 1866 (R.S. § 3186) and since that time has been in substantially the same form. * * * The Federal statutes create specific liens for taxes and as a corollary give a specific remedy for their removal and when such liens once attach, they may be lifted only as provided thereunder.
>
> * * * * * *
>
> "The jurisdiction of Federal District Courts is limited not only by the Constitution (U.S.C.A.Const. art. 3, § 2, cl. 1), but also by the Acts of the Congress (Jud.Code § 24, 28 U.S.C.A. § 41), and where the latter, in conferring it, points out the manner in which it shall be exercised, only that method expressly or impliedly conferred may be followed. * * * [Citing cases.]
>
> * * * * * *
>
> "The right of the plaintiff to a release of the lien here in question is purely statutory and the jurisdiction of the Court may not be enlarged by implication. * * * Since the statute does not expressly or impliedly give the Court power to discharge the lien by decree, the only statutory method by which it may be done is sale. * * * "

See also United States v. Security Trust & Savings Bank, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53; United States v. Bank of America, 9 Cir., 265 F.2d 862; United States v. Rasmuson, 8 Cir., 253 F.2d 944; Ersa, Inc. v. Dudley, 3 Cir., 234 F. 2d 178; United States v. Phillips, 5 Cir., 198 F.2d 634; and United States v. Kensington Shipyard & Drydock Corp., 3 Cir., 169 F.2d 9.

The New York University Tax Law Review, 13 Tax L.Rev. 247 and 459 (1958), contains an extensive fully annotated article on "Federal Tax Collection and Lien Problems" from which we quote, pages 460–461: "Automobile purchasers and those who lend on such security, who commonly rely on the certificate of title without a search of general personal property lien records should take warning since the Government has been known even to trace used cars from their former owners through the dealer to innocent purchasers and to deprive them of their purchase." The supporting citation is to Moss v. United States (W.D.Okla.1955) 48 A.F.T.R. 1670 or par. 72,596 P.H.Fed.1955, 55–1 U.S.T.C. par. 9391, where it appears that the plaintiff's decedent paid $1,500.00 for a used automobile in disregard of a federal tax lien against the vendor notice of which had been duly filed. The government seized the car and foreclosed its lien and plaintiff was held to have no claim against the government for the $1,500.00 that had been paid.

The appellees have laid stress on the fact that in this case the taxpayer's cash money in the amount of $16,633.65 went into the purchase of the new car and machinery and it is asserted that the government had no lien on that money, but benefited greatly by gaining the lien on the property obtained by the taxpayer in the transaction. That may not be a strictly accurate picture. Under the statute the government could have distrained upon the taxpayer's money in his possession but the appellees were entitled to keep it notwithstanding the filing of notice of the tax lien because they gave consideration and were "without notice or knowledge of the existence of such lien", section 6323(c) (1) and (2), 26 U.S.C.A. (I.R.C.1954), "Exception in case of securities". But that the taxpayer transferred his money as well as his property to appellees is without relevance

738

here. There is no attempt to recover the money but the tax lien is prior to any interest of the appellees in the used car and machinery transferred to them.

The orders appealed from are reversed, the causes are remanded for further proceedings not inconsistent with the opinion.