UNITED STATES of America,
Appellant,

v.

Fay HEASLEY et al., Appellees.

Fay HEASLEY and Selma Heasley,
Appellants,

v.

UNITED STATES of America and Henry
W. Anderberg, Receiver, Appellees.

Fay HEASLEY and Selma Heasley et al.,
Appellants,

v.

UNITED STATES of America and Henry
W. Anderberg, Receiver, Appellees.

Nos. 16470, 16542 and 16543.

United States Court of Appeals
Eighth Circuit.

Oct. 24, 1960.

Helen Buckley, Atty., Tax Division, Dept. of Justice, Washington, D. C., for the United States. Howard A. Heffron, Acting Asst. Atty. Gen., Lee A. Jackson and A. F. Prescott, Attys., Dept. of Justice, Washington, D. C., on the brief.

J. F. X. Conmy, Bismarck, N. D., for the Heasleys.

Philip B. Vogel, Fargo, N. D., for appellees Stutsman Implement Co., Inc., and Midwest Motors.

Herman Weiss, Jamestown, N. D., for Henry W. Anderberg, receiver.

Before SANBORN, WOODROUGH and MATTHES, Circuit Judges.

MATTHES, Circuit Judge.

These appeals, separately taken, were consolidated for oral argument, and while they involve different orders of the district court, they grow out of the same litigation and can be disposed of in one opinion.

In No. 16,470, the Government appeals from that portion of the order of the district court entered on April 8, 1960, finding that inasmuch as the monies on deposit with the clerk of that court, and the note secured by mortgage on the real estate satisfied the Government's lien, all other property belonging to the receivership estate should stand released from the Government's lien.[1] Briefs on this issue have also been filed by the Stutsman County Implement Co., Inc., and Midwest Motors, defendants in the original foreclosure action brought by the United States. As holders of certain personal property encumbered by the lien, these companies support the portion of the order releasing the lien.

In appeal No. 16,542, Fay Heasley and Selma Heasley, his wife, two of the defendants in the action, appeal from the order of the district court, confirming the sale by the receiver of the real estate, and rejecting the bid of Fay Heasley, Trustee.

In appeal No. 16,543, Fay Heasley, Selma Heasley, Bob Hendrix, Arley Herr and Paul Heasley appeal from the order confirming the sale of real estate and from the order entered on April 8, 1960, concerning redemption of outstanding tax certificates.[2]

Much of the factual background is developed in the March 6, 1959 memorandum opinion of the district court adjudicating the respective rights of the parties in the original foreclosure action, reported in D.C., 170 F.Supp. 738. Fay Heasley was indebted to the Government for income taxes for the calendar years 1944 through 1949, and upon trial of the main action brought to foreclose the Government's lien against Fay's properties, it was stipulated that for said years the tax liability, with statutory penalties and interest, was $198,198.92 as of December 29, 1958, with interest accruing thereon at the rate of $25.22 each day since that date.[3]

After a plenary hearing, the district court found that the Government had a valid and subsisting lien upon all of the property owned by the defendant Fay Heasley, consisting of certain cash on deposit with the clerk of the court, cattle, farm machinery, equipment and grain described in the inventory filed by the receiver, and a large tract of real estate in Stutsman County, North Dakota. See 170 F.Supp. 742 and 743. Following the filing of the court's memorandum opinion, and on April 4, 1959, its formal judgment and decree was entered whereby the rights of all the parties were adjudicated. Fay Heasley filed a notice of appeal from this judgment, but failed to prosecute the same, and on December 28, 1959, the appeal was dismissed for want of prosecution. 272 F.2d 947.

In conformity with the order of the court, the receiver advertised the real estate for sale and received a number of different bids. On March 24, 1960, after hearing, the court confirmed a sale of all the real estate to Arvel Glinz and Marjorie Glinz, husband and wife, for the total consideration of $225,300, payable $45,300 in cash upon confirmation of the sale, $100,000 of the balance payable in four equal annual installments, commencing March 1, 1961, and final installment of $80,000 due on March 1, 1965. The entire unpaid balance was to be evidenced by note secured by mortgage on the real

1. A stay of this order was granted by this Court on April 14, 1960, and continued on May 9, 1960.

2. Bob Hendrix and Arley Herr are sons-in-law of Fay and Selma Heasley; Paul Heasley is their son.

3. Fay Heasley was convicted of income tax evasion for fraudulent understatements of tax liabilities. His conviction was affirmed by this Court. Heasley v. United States, 8 Cir., 218 F.2d 86, certiorari denied, 350 U.S. 882, 76 S.Ct. 134, 100 L. Ed. 778.

estate, bearing interest at 5% per annum.[4]

A small portion of the real estate was owned by Fay and Selma Heasley, as joint tenants, and approximately 12½% of the purchase price was attributed to the joint tenancy. One-half of this amount, $13,833.42, was set aside for Selma.

The order of confirmation was amended in certain respects on April 8, 1960. Pertinent to and forming the basis of appeal in No. 16,470 is the ruling that the Government's lien was satisfied by the funds on deposit with the clerk and the amount of the note given by the purchasers, and directing that the Government's lien on all other property of the taxpayer Heasley stand released. This would have the effect of releasing personalty said to have a value of approximately $68,000 from the Government's lien.

Here, it should be noted that this is the second time certain facets of this litigation have reached this Court. In United States v. Stutsman County Implement Co., 274 F.2d 733, we considered and reversed the action of the district court in releasing the Government's lien from farm machinery and an automobile taken in trade on new machinery purchased by Heasley.

Further discussion of the facts will ensue as the questions presented are met and disposed of.

### Appeals Nos. 16,542 and 16,543.

The main thrust of the argument of appellants in these appeals is that the Court erred in rejecting the bid of Fay Heasley and in confirming the sale to Arvel and Marjorie Glinz. The events precipitating this controversy, in summary, are: Following the order of the Court directing the sale of the real estate at private sale bids were filed with the receiver, including the one from the Glinzes and one from Selma Heasley, the latter being the highest of the lot obtained. At the hearing to determine whether sale should be confirmed, the receiver recommended that the Selma Heasley bid should not be approved because of her inability to fulfil the obligation and because the bid was not made in good faith. At the conclusion of the hearing, it was determined that the real estate should be re-advertised and new bids accepted. This was done and bids were received until 5 p. m. on February 23, 1960. Three bids were received. Arvel and Marjorie Glinz filed their bid in the amount of $225,300 payable in the manner hereinabove set out. On March 5, 1960, a hearing was held to determine whether the receiver's recommendation that the Glinz bid be accepted, should be approved. On the morning of that hearing Selma Heasley submitted another bid in an amount greater than the Glinz bid. No earnest money was attached to this bid. Again, upon hearing, the receiver testified that in his opinion Selma's bid was not made in good faith. On March 9, 1960, the Court entered its order approving the report of the receiver and directed that the sale to the Glinzes would be confirmed on the terms contained in the order unless a bona fide offer to purchase "shall be filed with the Clerk of the U. S. District Court, Fargo, North Dakota, prior to hearing on confirmation of sale, which offer guarantees at least a ten percent increase over the price offered by said bid now on file herein." In the order the Court also found that the bid of Selma Heasley was not made in good faith, timely, nor in compliance with the receiver's advertisement soliciting bids and that it was therefore rejected.

On March 19, 1960, there was a hearing on the receiver's application for an order confirming the sale to the Glinzes. On the morning of this hearing another bid was made by Fay Heasley as trustee for the family, for $247,830, with a down payment of $47,830, $100,000 of the balance payable in four equal annual installments, and $100,000 in a final payment. To this bid were attached checks

---

4. Mortgage note in the amount of $180,000, payable to the United States and Fay Heasley, incorporating these provisions was signed March 24, 1960.

totalling $1,000. The Court conducted a hearing in which the ability of Fay Heasley to carry through on his bid was fully explored. Nothing can be added to this opinion by a recital of the testimony bearing upon the issue of good faith of Heasley in submitting the bid and his ability to comply with the terms of his bid. We have carefully reviewed the full record, and are convinced that the Court was fully justified in concluding at the close of the hearing:

"Well, I may say to you gentlemen that the Court feels that Fay Heasley and the entire Heasley family have had every opportunity to produce a tangible bid that would be acceptable to the receiver and that the receiver could recommend, and the Court feels that the receiver has done his utmost as has counsel for the receiver so it would be possible to keep this land with the Heasleys, and I think it is not overstatement to say that the Government of the United States through its United States Attorney has felt the same way. That is the impression the Court has gotten.

"It has been impossible to deal with a man of the obduracy and the stubbornness and the defiant attitude and the failure to cooperate by Fay Heasley. It is the root of his troubles. There isn't anything his attorneys can do. He has chosen, after a fashion, to defy everyone including the Government of the United States. We have been in court interminably doing our best to give them an opportunity. We were in here two weeks ago. Fay Heasley was here and some of his children were here. They have had an opportunity to come in here, if they were going to, to release some of the funds that were due them under a Court order. That could have been arranged.

\*   \*   \*   \*   \*   \*

"The Court thinks that the bid of Fay Heasley submitted today is not in good faith, and it feels that the bid of Arvel Glinz and Marjorie Glinz is made in good faith, that the report of the receiver should be approved and confirmed; \*   \*   \*."

The sale of the real estate was governed by the provisions of Title 28 U.S. C.A. § 2001. Aside from objection to the failure of the Court to approve the bid of Fay Heasley, which in amount represented at least a 10 per centum increase over the bid of the Glinzes, no suggestion is made that the provisions of § 2001 did not receive full compliance. Decisive here, is the specific requirement that the bid representing a 10 per centum increase must be a "bona fide offer." Viewing the full picture, we have no hesitancy in ruling that the Court's action in rejecting the Heasley bid was eminently proper.

■■ Appellants also assign as error the action of the Court in ordering the real estate sold on terms. Neither reason nor authority supports this contention. Section 2001(b), supra, empowers the court to order the sale of realty at private sale "for cash or other consideration and upon such terms and conditions as the court approves, if it finds that the best interests of the estate will be conserved thereby." Thus, the "best interests" of all parties concerned is the polestar in a situation of this kind. On this record it is conclusively demonstrated that it would have been inimical to the best interests of all parties to sell the real estate for cash, in fact, it is made to appear that informal offers obtained by the receiver indicated that it would be difficult to obtain in excess of $100,000 for the real estate on a cash sale. In general, the rule in federal courts is well settled that the matter of confirming a judicial sale rests in the sound judicial discretion of the trial court and this discretion will not be disturbed on appeal except in cases of its abuse. See Bovay v. Townsend, 8 Cir., 78 F.2d 343, 345, 105 A.L.R. 359; Speers Sand & Clay Works v. American Trust Co., 4 Cir., 52 F.2d 831, 835, certiorari denied 286 U.S. 548, 52 S.Ct. 500, 76 L.Ed. 1284; Revere Copper & Brass v. Adriance Machine Works, 2 Cir., 68

F.2d 708, 709.[5] This record convincingly and conclusively demonstrates that the trial court did not abuse its discretion in directing the sale of the realty on terms. Indeed, Fay and Selma Heasley are hardly on firm ground in raising this point inasmuch as they did not object to such a sale until after their bids, also on the term basis, were rejected.

■ In their remaining points, appellants complain of the alleged failure of the Court, (a) to provide for redemption of the land; (b) to recognize or protect the homestead interest of Selma Heasley in the residence; (c) to marshal assets, and (d) the refusal to give preference to unredeemed tax certificates. Careful consideration of these assignments impels the conclusion that they are completely without substance or merit. As to right of redemption where land is sold at a judicial sale, a sufficient answer is that no such right exists by federal law. Unlike the sale of property under levy and distraint proceeding, where by statute there is a specific provision for redemption of the property, § 6337(b) of the 1954 Internal Revenue Code, 26 U.S. C.A. § 6337(b), Congress has not seen fit to provide that the right to redeem shall exist where property is sold pursuant to a judicial decree. See § 2001, Title 28, supra; Plumb, "Federal Tax Collection and Lien Problems," 13 Tax L.R. 247, 275, 277–279.

■■ We would be fully justified in giving no consideration to the homestead question, as that issue was fully litigated and finally adjudicated in the Court's judgment and decree rendered on April 4, 1959, from which no appeal was perfected.[6] The principles of res judicata are clearly applicable. Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 597–598, 68 S.Ct. 715, 92 L.Ed. 898. Furthermore, exploration of the question on the merits has convinced us that as against federal tax liens, homestead exemptions prescribed by state laws,[7] are of no effect. See United States v. Heffron, 9 Cir., 158 F.2d 657, certiorari denied 331 U.S. 831, 67 S.Ct. 1510, 91 L.Ed. 1845; Shambaugh v. Scofield, 5 Cir., 132 F.2d 345; and see discussion, Plumb, supra, 13 Tax L.R. at pp. 262, 263.

■ It appears that local taxes on the real estate were not paid for the years 1954 to 1957, inclusive, and pursuant to the law of North Dakota, the land was sold, subject to right of redemption, and tax certificates were issued and outstanding for said years in the total amount of $16,299.20. Apparently, these tax certificates are held by various members of the Heasley family. After hearing, and upon consideration, the Court found that the lien of the Government was superior to the interest represented by the tax certificates, and ordered that a lien for the tax certificates would extend only to any surplus remaining after payment in full of the Government's lien. The appellants in No. 16,543 are complaining of this ruling, but we have difficulty in ascertaining from their brief the precise nature of their contention. At any rate, the order with respect to the tax certificates was correct. The Government's lien for taxes here involved was perfected on February 18, 1954, and prior to the liens for county and state taxes on the real estate. In this situation, it would have been improper for the Court to give preference to such junior liens prior to the satisfaction of the amount due the Government. United States v. Bond, 4

---

5. The sales involved in the Bovay and Speers cases were "public" sales; the sale in the Revere case was termed "a public judicial sale by the court." Section 2001 provides for public or private sale of realty. To our mind, no distinction need be made in applying the general rule.

6. The Court there ruled that the Government's lien "is a first lien upon all of Fay Heasley's property and is senior in priority to Selma Heasley's claim for a homestead exemption from the real property solely owned by Fay Heasley * * or from Fay Heasley's half interest in the real property * * * which Fay Heasley jointly owns with Selma Heasley."

7. Here, appellants rely upon the North Dakota statutes dealing with homestead rights.

Cir., 279 F.2d 837; United States v. Gilbert Associates, 345 U.S. 361, 73 S.Ct. 701, 97 L.Ed. 1071; United States v. New Britain, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520.

This record reveals a conscientious desire on the part of the trial judge to fully protect taxpayer Heasley and his family with respect to their rights in the real estate. Regrettable as it may be that this family has lost the farm, we cannot escape the conclusion that a large measure of their present plight may be traced directly to the "obduracy, * * * stubbornness, * * * the defiant attitude and the failure to cooperate by Fay Heasley."

The orders appealed from in Nos. 16,542 and 16,543 are in all respects affirmed.

Appeal No. 16,470.

The question presented by this appeal is whether, upon a judicial sale of real estate of the taxpayer in a receivership proceeding, the court can judicially determine that a promissory note evidencing the balance due on the purchase price satisfies the liability of the taxpayer to the Government thereby authorizing the discharge of other property of the taxpayer from the Government's lien. As we have seen, the amount of the successful bid was in excess of Fay Heasley's liability to the Government.[8]

Underlying the issue before us is the fundamental principle that liens for federal taxes are entirely statutory and the provisions for their collection are to be strictly followed according to federal law. United States v. Security Trust & Savings Bank, 340 U.S. 47, 49–50, 71 S.Ct. 111, 95 L.Ed. 53; United States v. Acri, 348 U.S. 211, 213, 75 S.Ct. 239, 99 L.Ed. 264; Bank of Nevada v. United States, 9 Cir., 251 F.2d 820, 824, certiorari denied 356 U.S. 938, 78 S.Ct. 780, 2

L.Ed.2d 813; United States v. Stutsman County Implement Co., 8 Cir., 274 F.2d 733, 737. Statutes create the tax lien, prescribe its duration and provide for the manner of releasing the lien. See United States v. Stutsman County Implement Co., supra; Tomlinson v. Poller, 5 Cir., 220 F.2d 308, certiorari denied sub. nom., Pace v. Tomlinson, 350 U.S. 832, 76 S.Ct. 66, 100 L.Ed. 742; United States v. Kensington Shipyard & Drydock Corp., 3 Cir., 169 F.2d 9, 12; and Metropolitan Life Ins. Co. v. United States, 6 Cir., 107 F.2d 311, 313, certiorari denied 310 U.S. 630, 60 S.Ct. 978, 84 L.Ed. 1400, where this pronouncement appears: "The Federal statutes create specific liens for taxes and as a corollary give a specific remedy for their removal and when such liens once attach, they may be lifted only as provided thereunder."

Turning then to the statutes, we find that § 6321[9] provides that if any person liable to pay any tax, neglects or refuses to pay the same after demand, the amount shall be a lien in favor of the United States *upon all property and rights to property,* whether real or personal; § 6322 provides that the lien shall continue until the liability for the amount so assessed is satisfied or becomes unenforceable by reason of lapse of time; § 6311 authorizes the Secretary or his delegate to receive for internal revenue taxes, checks or money orders, to the extent provided by regulations; § 6312 makes it lawful for the Secretary or his delegate to receive Treasury bills, notes and certificates of indebtedness issued by the United States in payment of taxes, to the extent and under conditions provided in regulations. There are also statutory provisions for the release of the lien or partial discharge of property. Section 6325 authorizes the acceptance of a bond conditioned in the manner prescribed by the statute. See Tomlinson v.

---

8. From the briefs it is made to appear that upon payment of the face amount of the note together with the amount received from the sale of 1958 and 1959 crops and the cash down payment from sale of land, there will be more than sufficient funds available to pay certain expenses and the tax liability, making it unnecessary to resort to the personalty.

9. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, Title 26 U.S.C.A.

Poller, supra, reversing an order directing the Internal Revenue Director to accept a bond tendered by two taxpayers which failed to conform to statutory requirements. This same section also provides that the Secretary or his delegate may issue a certificate of discharge for any part of the property subject to any lien if the Secretary finds that the fair market value of that part of the property remaining subject to the lien is at least double the amount of the unsatisfied liability secured by such lien.

██ It is evident that Congress has not authorized the acceptance of a promissory note in satisfaction of the liability of the taxpayer. In ordering the personal property having a value in excess of $60,000 released from the Government's lien, the trial court did not rely upon any statute specifically empowering him to take such action, but apparently proceeded on the equitable theory that the Government had elected to accept the note in lieu of its lien on all of the taxpayer's property. At the conclusion of the hearing from which the questioned order emanated, the Judge stated:

> "The Court thinks the Government has made an election. The Court thinks that under Section 7403 the real estate having been subjected to payment of the liability upon terms agreed to by the Government, it cannot now be heard to complain. The Government made an election under Section 7403 and must stand by it."

In the first instance, the evidence is wholly insufficient to support the conclusion that the Government elected to accept a note which would not be finally liquidated until five years later, in lieu of its lien upon valuable personalty. While the Government did not oppose the sale of the real estate on terms, obviously because it, along with all interested parties realized that such a sale would be for the best interests of all concerned, there are no facts proving directly or inferentially that the Government agreed to accept the note in full payment of the taxpayer's

liability. Indeed, the Government appealed promptly from the order and immediately thereafter applied to this Court for action staying the order releasing the personalty until the question could be determined on appeal. We granted such relief.

Of greater import, however, is the fact that there was no statutory authority for the Court to rule that the promissory note constituted full satisfaction of the taxpayer's liability to the Government for income taxes, thereby authorizing release of the tax lien from other personalty. In United States v. Stutsman County Implement Co., supra, the "equities" of the matter were presented to this Court, and we clearly ruled that the equity power of the Court was limited by applicable statutes, stating, 274 F.2d at page 736:

> "In this case, it is the statute that creates the tax lien and prescribes its duration and after the notice has been duly given the power of the court to determine the rights of the parties in respect to the lien is limited by the statute. There was no statutory authority conferred on the court to discharge or terminate the lien without satisfaction of the tax or exhaustion of the property and *its equity power was 'limited by special statutory provisions.'*" (Emphasis supplied.)

See also Tomlinson v. Poller, supra.

██ In the final analysis, it cannot be gainsaid that Fay Heasley has no standing to complain if his personal property is sold and the proceeds applied on his indebtedness to the Government. This, in effect, will serve to increase his equity in the proceeds of the mortgage note. In this connection, the question is, should the taxpayer, who is enmeshed in troubles of his own making, wait five years before realizing his equity in the property, or should the Government be compelled to do the waiting, while the taxpayer obtains, at once, valuable property free of the lien? We believe the question suggests the answer.

The order appealed from is reversed.