OMNIBUS FINANCIAL CORPORA-
TION, and Arizona Turf Supply,
Inc., Plaintiffs-Appellants,

v.

UNITED STATES of America, United
States of America Internal Revenue Ser-
vice, George D. Patterson and Carlos
Tellez, Defendants-Appellees.

No. 75–2440.

United States Court of Appeals,
Ninth Circuit.

Dec. 29, 1977.

John D. Helm (argued), of Steiger, Helm & Kyle, Tempe, Ariz., for plaintiffs-appellants.

Ernest J. Brown (argued), Washington, D. C., for defendants-appellees.

Before BARNES, Senior Circuit Judge, SNEED, Circuit Judge, and HAUK, District Judge.*

* Hon. A. Andrew Hauk, United States District Judge for the Central District of California, sitting by Designation.

1. The appellees contend that the notice of appeal was filed prematurely by plaintiffs (Appellee's Brief at 2). That contention is not borne out by the record.

HAUK, District Judge:

*Facts:*

This is an action for damages allegedly caused by a purported improper Federal Internal Revenue Service levy on, and sale of, the assets of a business operated under the name of "Russ Keeton's Saveway Market." The District Court Judge (Honorable C. A. Muecke, D. Ariz.) granted Summary Judgment in favor of the defendants, two employees of the Internal Revenue Service. Judgment was entered on June 16, 1975. Notice of appeal was filed on June 23, 1975.[1]

Plaintiffs, Omnibus Financial Corporation (hereinafter referred to as taxpayer) and Arizona Turf Supply, Inc. (hereinafter referred to as Arizona Turf) are two related corporations. Taxpayer owns all of the stock of Arizona Turf, and both had interests in a grocery business, "Russ Keeton's Saveway Market,"[2] which was apparently owned and operated by the taxpayer's wholly owned subsidiary, Arizona Turf. In the action, plaintiffs claim various damages arising out of the seizure and sale of the assets of "Russ Keeton's Saveway Market" by defendants, agents of the Internal Revenue Service. The levy, seizure and sales were conducted to satisfy withholding and employment tax delinquencies of the taxpayer. Specifically, the plaintiffs claim that the defendant IRS Agents failed to follow the procedures set forth in 26 U.S.C. §§ 6335 and 6336,[3] thereby violating plaintiffs' constitutional rights because the levy, seizure and sales were unlawful and violated due process of law under the 4th and 5th Amendments to the U. S. Constitution.

The levy and seizure in question were made on April 14, 1970, by defendant Agent

2. The taxpayer claims only to have a $25,000 security interest in the business; whereas Arizona claims ownership of the "Russ Keeton's Saveway Market." The government does not concede those allegations and the trial court did not litigate those issues below.

3. 26 U.S.C. § 6335, Sale of Seized Property and 26 U.S.C. § 6336, Sale of Perishable Goods, which need not here be quoted in full.

Carlos Tellez. The items seized on April 14th included perishable commodities (*i. e.,* fresh fruits, vegetables, fresh meat, dairy products, frozen foods, and baked goods) in addition to nonperishable items (*i. e.,* canned goods, liquor, a liquor license, and other equipment). Agent Tellez viewed the perishable items, obtained the store manager's opinion as to their value, formally set an appraised value and minimum price of $1,000 on those items and proposed to sell the perishables on April 15, 1970, at 10:00 a. m. Agent Tellez' supervisor approved the appraisal and the proposed sale, and taxpayer's president, Dale Eyman, Jr., was notified by telephone on April 14th of the seizure, the appraisal of the perishables, the impending sale, and the taxpayer's right to purchase the perishables for the minimum price or to post bond to forestall the sale. Then, written notification of the sale, appraised value, minimum price and right to purchase were provided to the taxpayer prior to the sale on April 15, 1970.[4] The perishables were sold for $2,575.

The remaining nonperishable items were sold on May 8, 1970, Agent Tellez having set a minimum price of $1,000 after taking into account an encumbrance on the assets seized.[5] The sale of the nonperishables brought $2,000. At the sales of both the perishables and the nonperishables, it was only the interest of the taxpayer on the property that was put up for sale.[6]

Plaintiffs in their suit claim that the notice, appraisal, and minimum price requirements of the relevant statutes and regulations were not followed, that the business and its assets did not belong to the taxpayer but instead were owned by Arizona Turf, that Agent Tellez was so informed, and that as damages, taxpayer was entitled to $25,000, the value of its alleged security

interest in the seized property, while Arizona Turf seeks damages of either $3,000 or $300,000 [7] as the value of the property sold. The District Court granted Summary Judgment in favor of the defendants, Internal Revenue employees Patterson and Tellez, finding *inter alia,* that (1) the former District Director, defendant Patterson, was strictly a nominal party and in no way participated in the alleged wrongful sales of property; (2) defendant Tellez was immune from suit; (3) defendant Tellez was acting within the scope of his official authority; (4) the provisions of 26 U.S.C. §§ 6335 and 6336 had been complied with; and (5) the plaintiffs' proper remedy was against the purchaser of the property, or against the United States pursuant to 26 U.S.C. §§ 7422 and 7426.

*Issues :*

(1) Whether the District Court was "clearly erroneous" in determining that defendants had complied with the "minimum price," "appraisal," and "notice" requirements of 26 U.S.C. §§ 6335 and 6336 and the IRS regulations thereunder.

(2) Whether the District Court erred in determining defendant Tellez to be immune from suit. (Plaintiffs do not contest defendant Patterson's immunity and therefore do not raise any issue as to Patterson's dismissal by the District Court.)

(3) Whether the District Court erred in not ordering the pleadings to be amended to include the United States as a party under 26 U.S.C. §§ 7422 and 7426.

*Discussion :*

(1)—*Compliance with Law and Regulations*

◼ Plaintiffs contend that the District Court erred in finding that the provisions of

---

4. Affidavit of Agent Carlos Tellez, Record on Appeal (hereinafter cited as and referred to as App.R.) 60–65. Agent Tellez was operating pursuant to Internal Revenue Service Regulations, 26 C.F.R. §§ 301.6335–1 and 301.6336–1 which again, need not here be quoted in full.

5. Affidavit of Agent Carlos Tellez, App.R. at 64.

6. Affidavit of Agent Carlos Tellez, App.R. at 65. *See also,* 26 C.F.R. § 301.6335–1(c)(4)(iii) set out in note 4 *supra.*

7. The fourth amended complaint reads: "THREE HUNDRED˙THOUSAND ($3,000.00) DOLLARS". App.R. at 4. The Court is unclear as to the exact prayer that Arizona Turf has claimed.

26 U.S.C. §§ 6335 and 6336 had been complied with.[8] In support of that proposition plaintiffs allege that the "minimum price" requirement of 26 U.S.C. § 6335 set on the nonperishables was so low that the statutory requirements were not met. However, the plaintiffs failed to support this contention with any evidence of the actual value of the nonperishables at the dates of the levy, seizure, and sale. The only evidence they brought forth concerning the value of the nonperishables was alleged to be "the lowest ascribed value for the fourteen months prior to the seizure," taken from "available records," to wit, $162,277.00.[9] On the other hand, the affidavit of Agent Tellez indicates that he took several factors into account in setting the minimum price. In view of the fact that the title of any interest owned by the taxpayer in the perishables was potentially clouded by an outstanding lien,[10] the minimum price of $1,000 was set for the sale of only the interest of the taxpayer in the nonperishables.[11]

Plaintiffs also contend that the perishable items were not "appraised" as required by 26 U.S.C. § 6336 in that the appraised value was unreasonably low and that Agent Tellez was not qualified to appraise the property. As to the authority or qualifications of Agent Tellez to make an appraisal, the Internal Revenue Service Job Description for the position Agent Tellez held specifically provides for the appraisal of seized property.[12] Furthermore, the statute does not require, or even make mention of the necessity of an expert appraiser, and the plaintiffs cite no case which stands for that proposition.[13] Just as with the *nonperishables*, so also with the *perishables*, plaintiffs failed to support their contention with any evidence of the actual value of the *perishables* at the dates of levy, seizure, and sale, other than alleging it to be "the lowest ascribed value for the fourteen months prior to the seizure," taken from "available records," to wit, $6,643.61.[14] On the other hand, the affidavit of Agent Tellez reveals that he did make an appraisal of the *perishable* goods at $1,000, and in doing so viewed and inventoried the goods, sought the opinion of the manager of "Russ Keeton's Save-

**8.** The District Court found that the statutes in question (26 U.S.C. §§ 6335 and 6336) do not define or limit the terms "minimum price" or "appraisal." However, the Court did find that even if the word "reasonable" were in the statutes or were to be implied as a statutory modifier, nevertheless the provisions of the statutes were still complied with. App.R. at 187.

**9.** Affidavits of Dale Eyman, president of the taxpayer, App.R. at 99–101, and of David Smith, an employee and member of the board of directors of the taxpayer. App.R. at 102–104.

**10.** In his affidavit Agent Tellez set forth the factors that were considered in setting the minimum prices. Concerning the liquor license, Tellez considered the alleged claim of another third party of a lien against the license and of the potential government investigation and approval of a purchaser of a liquor license. In setting the minimum price on the balance of the non-perishables, Tellez considered the alleged lien of the Commercial Management Corporation in addition to the opinions of Group Supervisor Conrow and Revenue Officer Hal Houtchens. App.R. at 63–64.

**11.** Affidavit of Carlos Tellez, App.R. at 65. *See also*, 26 C.F.R. § 301.6335–1(c)(4)(iii) set out in note 4 *supra*.

**12.** The affidavit of the Acting District Director of Internal Revenue, Albuquerque, New Mexico, Victor Z. Billington, indicates that Carlos Tellez held the position of a Revenue Officer, GS–1169–11, and that the Internal Revenue Service Standard Position Description No. 419, which sets forth the duties and responsibilities for the position Agent Tellez held, provides for Revenue Officers to appraise seized property for the purpose of setting a minimum price. App.R. at 46–49 and 77–80.

**13.** The plaintiffs rely on the case of *U. S. ex rel. T.V.A. v. Easement and Right of Way*, 405 F.2d 305, 307 (6th Cir. 1968). However, that case simply required that the person making the appraisal have an opinion that is more than mere conjecture. That requirement is satisfied in this case as Agent Tellez, in addition to his own knowledge, consulted the manager of the "Russ Keeton's Saveway Market" in setting the appraised value and minimum price. App.R. at 61.

**14.** Affidavits of Dale Eyman, president of the taxpayer, App.R. at 99–101, and of David Smith, an employee and member of the board of directors of the taxpayer. App.R. at 102–104.

way Market," and then submitted the appraisal to his group supervisor for approval.[15]

Finally, plaintiffs contend that the defendant violated the "notice" provisions of 26 U.S.C. § 6336 concerning the sale of the perishables. The affidavit of Agent Tellez indicates that Dale Eyman, the president of the taxpayer, was orally informed of the seizure, the appraised value and minimum price, the sale date, and the taxpayer's right to purchase the goods for the minimum price or post bond in that amount on April 14, 1970.[16] This notice was confirmed by written notice (which contained substantially the same information absent the reference to the bond provision) delivered to the taxpayer approximately two hours before the sale on April 15, 1970.[17] Plaintiffs claim that such notice (two hours before the sale) was unreasonable. However, such an allegation obviously ignores the prior oral notice that was given to the taxpayer on the previous day.

On the basis of the foregoing discussion it is clear that the statutory requirements of "notice", "appraisal", and "minimum price" were all fully complied with by the defendant Tellez.

### (2)—Immunity of Defendant Tellez

■ It is argued that the District Court erred in finding that defendant Tellez was immune from suit. Plaintiffs appear to rely on the fact that Agent Tellez was performing *mandatory* duties rather than *discretionary* duties,[18] and argue that the case law cited by the District Court in its finding of immunity allegedly applies only to the performance of *discretionary* duties. This distinction, while relevant under the absolute immunity doctrines which existed prior to *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), must give

way to the qualified immunity doctrine established by that case. We have recognized in *Mark v. Groff*, 521 F.2d 1376 (9th Cir. 1975), a case involving conduct of I.R.S. agents, that such agents enjoy a qualified immunity and are "insulated from damage suits only if (1) at the time and in light of all the circumstances there existed reasonable grounds for the belief that the action was appropriate *and* (2) the officer acted in good faith." *Id.* at 1379–80.

Although the District Court appears to have employed the absolute immunity doctrine in holding Tellez immune from suit, its finding that he complied with the applicable statutes and the absence of any suggestion of bad faith enables us to affirm the District Court's holding.[19]

### (3)—Substitution of the United States as a Party Defendant

■ In the third issue raised on appeal, plaintiffs claim that the District Court erred in not ordering the pleadings to be amended to substitute the United States as a party defendant under 26 U.S.C. §§ 7422 and 7426. The provisions of 26 U.S.C. § 7422 deal with "civil actions for *refund.*" Section 7422(f)(1) provides that such an action can only be brought against the United States and *not* any officer or employee of the United States. Under section 7422(f)(2), if a suit for a *refund* is improperly brought against an officer or employee of the United States, the Court shall order, upon such terms as are just, that the pleadings be amended to substitute the United States as a party. However, a jurisdictional prerequisite to an action pursuant to 26 U.S.C. § 7422, and further to the substitution of the United States as a party, is *the filing of a claim for a refund.* 26 U.S.C. § 7422(a). In this case before us, neither the taxpayer nor Arizona Turf ever filed a

---

**15.** Affidavit of Agent Tellez, App.R. at 61–62.

**16.** Affidavit of Agent Carlos Tellez, App.R. at 62.

**17.** Affidavit of Carlos Tellez, App.R. at 62–63. A copy of written notice sent to the taxpayer is included in the record. App.R. at 164.

**18.** The language of the provisions of 26 U.S.C. §§ 6335 and 6336 do appear to impose mandatory duties as the sections use the word "shall" when requiring an act to be performed.

**19.** App.R. at 46–49 and 77–80.

claim for a refund.[20] Therefore, the District Court properly denied relief to the plaintiffs under 26 U.S.C. § 7422.

■ The provisions of 26 U.S.C. § 7426 deal with "civil actions by persons *other than taxpayers.*" Therefore, only the plaintiff Arizona Turf could fall within the purview of the statute. Under section 6426(a) any person *other than the taxpayer* can maintain an action against the United States for the wrongful levy against property of the taxpayer in which the person claims an interest. However, section 7426(d) specifies that an action for wrongful levy can only be brought against the United States and not against any officer or employee of the United States. The provisions of section 7426(e) require that the Court shall amend the pleadings to substitute the United States as a party in an action that is improperly filed against any officer or employee of the United States, *"upon such terms as are just."* It is further provided that the United States shall be substituted for the officer or employee as of the time the action was commenced against the officer or employee. 26 U.S.C. § 7426(e). It is with respect to this last provision of section 7426(e) that the parties are in dispute. The applicable statute of limitations for an action under 26 U.S.C. § 7426(a) is controlled by section 7426(h) which refers to 26 U.S.C. § 6532(c).[21] Under section 6532(c) the period of limitation is nine months from the date of the wrongful levy. In this case before us, the facts indicate that the Original Complaint was filed on August 7, 1970, well within the nine month limitation period.[22] However, the record also reflects that the plaintiffs, on February 14, 1972, withdrew their Original Complaint voluntarily prior to the filing of a First Amended Complaint.[23] Hence the government argues that the withdrawal should be treated as a voluntary dismissal and that the plaintiff Arizona Turf is barred by the nine month statute of limitations, since the mandatory amendment by the Court required under 26 U.S.C. § 7426(e) could only relate back to the date of the filing of the First Amended Complaint, March 9, 1972, a date more than a year after the nine month limitation period, which began to run on the date of the levy—April 14, 1970—and which came to an end on January 14, 1971. Plaintiff Arizona Turf argues that the First Amended Complaint was on file on the date of the withdrawal of the Original Complaint. That contention is simply not borne out by the record.[24]

Arizona Turf further contends that the voluntary withdrawal was never treated as a dismissal of the action by the District Court.[25] The defense, in support of the District Court's determination, argues that the plaintiff should not be allowed to proceed under 26 U.S.C. § 7426, since Arizona Turf conceded that the Original Complaint failed to state a claim against the United States, in a pleading filed on December 6, 1971 entitled "Reply to Motion to Dismiss or in the Alternative for Judgment on the Pleadings," Supplemental Appendix to Appellees' Brief at 24–25, App.R., 194.

In the light of this earlier concession and the subsequent withdrawal of the Original Complaint, we must support the District Court on this last issue of whether Arizona Turf can proceed against the United States under 26 U.S.C. § 7426, because any further amended complaint could only relate back

**20.** Civil Docket of the Clerk of the Court, United States District Court for the District of Arizona (hereinafter cited as and referred to as Civil Docket). App.R. at 193–97.

**21.** 26 U.S.C. § 6532.

**22.** Civil Docket, App.R. at 194.

**23.** Civil Docket, App.R. at 195.

**24.** The Civil Docket reveals that the Original Complaint was withdrawn on February 14, 1972, while the First Amended Complaint was not filed until March 9, 1972. App.R. at 195.

**25.** The plaintiffs contend that the fact that the District Court held the defendant's motion to dismiss in abeyance at the time the plaintiffs' Original Complaint was withdrawn indicates that the withdrawal was not treated as a voluntary dismissal. App.R. at 195 (minute entry of February 14, 1972).

to March 9, 1972, and therefore would be barred by the nine month statute of limitations.[26]

On July 5, 1977, when this matter came on for hearing in the Court of Appeals, the Panel ordered further briefs upon the following question:

> *Question* : Assuming that Plaintiff-Appellant Arizona Turf Supply, Inc., has a viable cause of action under 26 U.S.C. § 7426(a), despite the nine month period of the Statute of Limitations in 26 U.S.C. § 7426(h), could the putative Defendant-Appellee, United States of America, or its Agents in the Internal Revenue Service of the Treasury Department, properly and constitutionally levy upon, seize, and sell, as they did, the interest of Plaintiff-Appellant Omnibus Financial Corporation (the parent Corporation of Arizona Turf Supply, Inc.) in the perishable commodities and non-perishable items which were sold on April 15, 1970, and which it is claimed by Plaintiffs-Appellants were owned by Arizona Turf Supply, Inc.?

 After this briefing, we are now satisfied that the Internal Revenue Service officers properly and constitutionally levied upon, seized, and sold the interest of plaintiff/appellants, Omnibus Financial Corporation (parent corporation of Arizona Turf Supply, Inc.) in the perishable commodities and nonperishable items which were sold on April 15, 1970, and May 8, 1970, despite the claim by the plaintiffs/appellants that these commodities and items were owned by Arizona Turf Supply, Inc. Plaintiff did not establish that the government's liens had not attached prior to the transfer of property from Omnibus to Arizona Turf Supply, Inc. Therefore, the levy, seizure, and sale

satisfied the requirements of the Internal Revenue Code. 26 U.S.C. §§ 6321 *et seq.* *See generally Randall v. H. Nakashima & Co.,* 542 F.2d 270 (5th Cir. 1976); *United States v. Trigg,* 465 F.2d 1264 (8th Cir. 1972), *cert. denied,* 410 U.S. 909, 93 S.Ct. 963, 35 L.Ed.2d 270 (1973); *Seaboard Surety Co. v. United States,* 306 F.2d 855 (9th Cir. 1962),—incidentally an Opinion by a member of this Panel, Senior Circuit Judge Barnes; *United States v. Stutsman County Implement Co.,* 274 F.2d 733 (8th Cir. 1960).

 If plaintiff/appellant Arizona Turf Supply, Inc., feels that the buyer has claimed a greater interest than the Government purported to sell, its remedy lies in a suit against said buyer to establish the extent of its ownership. *Aqua Bar & Lounge v. United States Dept. of Treasury,* 539 F.2d 935 (3d Cir. 1976).

Under all of the facts and the law, the District Court must be and is,

AFFIRMED.

---

**26.** The Court has considered whether or not it should remand the case to the District Court for a determination concerning whether a further amended complaint should be ordered, "*upon such terms as are just,*" in the language of 26 U.S.C. § 7426(e), allowing plaintiff Arizona Turf to amend once again so as to be able to proceed against the United States. But this would call for a determination of whether or not any further amended complaint could possibly relate back to the date of the Original

Complaint, under the provisions of Federal Rule of Civil Procedure 15(c). And since we hold that such a relation back could not take effect because of the plaintiffs' concession of their failure to state a claim against the United States in the Original Complaint and the subsequent withdrawal (in effect, voluntary dismissal) of the Original Complaint, we do not remand the case to the District Court. We note, however, that the plaintiffs may have a remedy against the purchaser at the sales in question.